Laura Duvall YOUNCE, widow; Edgar Younce and wife, Blanche Younce; Joseph Younce and wife, Louise Younce; Paul Younce and wife, Margie Younce; Frances Younce; Lois Younce Duvall and husband, Kelly B. Duvall; Ruth Younce Crisp and husband, Troy Crisp; Elda Roper Yonce, widow; Homer Yonce, and wife, Patricia West Yonce; Wayne Yonce and wife, Sally Yonce; Kathleen Yonce Conley and husband, Charles Conley, Jr.; Peggy Yonce Sanders and husband, James Sanders; Gladys Yonce Miller; Betty Yonce Hord, widow, Plaintiffs,

and

Dorothy Yonce Waters and husband, Dwight Lamen Waters; Myrtle Yonce Allen and husband, Jess Allen; Ruth Yonce Solesbee and husband, Ralph Solesbee; Alba Yonce, widow; Mitchell Rowland and wife, Katie L. Rowland; Steve Rowland and wife, Cynthia L. Rowland; and David Brice Rowland and wife, Patricia B. Rowland, Plaintiffs-Intervenors,

v.

**UNITED STATES of America, Defendant.**

No. B-C-85-132.

United States District Court, W.D. North Carolina, Bryson City Division.

June 1, 1987.

Herbert L. Hyde, G. Edison Hill, Asheville, N.C., for plaintiffs Laura Younce, Edgar and Blanche Younce, Joseph and Louise Younce, Paul and Margie Younce, Frances Younce, Lois and Kelly Duvall and Ruth and Troy Crisp and all plaintiffs-intervenors.

Brady & Keller, Lenoir, N.C. by Robert M. Brady, for plaintiffs Elda Younce, Homer and Patricia Yonce, Wayne and Sally Yonce, Kathleen and Charles Conley, Peggy and James Sanders, Gladys Miller and Betty Hord.

U.S. Atty. Charles R. Brewer, Asst. U.S. Atty., Clifford C. Marshall, Asheville, N.C., for defendant.

## MEMORANDUM OF DECISION

SENTELLE, District Judge.

Plaintiffs herein sue to obtain quiet title under the provisions of 28 U.S.C. § 2409a to certain real estate in the Nantahala Gorge lying in Swain County,[1] North Carolina, and claimed by the United States as part of the Nantahala National Forest. Plaintiffs make their claim as the heirs at law of Elihu Barnes. The parties stipulate that at least one of the plaintiffs is an heir at law of Elihu Barnes and, as such, can take for all should the Court conclude that the heirs at law of Elihu Barnes are possessed of quiet title to the property.

### I. PLAINTIFF'S CLAIM

Plaintiffs trace their claim to four original state grants, each covering an area of 100 acres, more or less, and being denominated as Grants 1439, 1440, 1441 and 1442, all issued by the State of North Carolina in 1854 to "Elihu Barnes and Company." While the position of each party[2] in this lawsuit defies concise statement, for purposes of the initial question plaintiffs claim that those grants conveyed title into their ancestor; that there is no out conveyance; and that they are, therefore, presently seized of title. Defendant claims that while Elihu Barnes is stipulated for purposes of this lawsuit to be the progenitor of the plaintiffs, or one of them, that Elihu Barnes and Company, whoever or whatever he, it or they was or were, was not or were not such progenitor(s). Otherwise put, the United States contends that the appellation "and Company" indicates the taking of the property not by Elihu Barnes individually but by some collective entity of which he was a part or an agent. Plainly under contemporary North Carolina corporate

---

1. The lands in question lay in Macon County at the time of the original grants hereinafter discussed. In 1871, a portion of Macon County including all or substantially all of the land relevant to this lawsuit was carved from Macon County for the creation of Swain. See *Wyman v. Taylor,* 124 N.C. 426, 32 S.E. 740 (1899).

2. Although plaintiffs are 96 in number, they will be treated as one "party" for purposes of this opinion whenever convenient to the language of the opinion since the 96 claims are identical.

law, that inference drawn by the defense would be the only logical conclusion. N.C. Gen.Stat. § 55–12. However, as plaintiffs counter, in 1854 and for many years thereafter, the corporate law of this State was not so well defined and the words "and Company" did not necessarily carry their modern implication. As late as 1913, the North Carolina Supreme Court held, "The authorities generally hold that 'company' is a generic and comprehensive word, and may include individuals, partnerships, and corporations. 8 Cyc., 399." *Asbury v. Albemarle*, 162 N.C. 247, 251, 78 S.E. 146 (1913). As plaintiffs argue, the ruling case law of North Carolina regarding the then appropriate construction of the words "and Company," while indicating that Elihu Barnes did not take alone, leaves open the possibility that he did in fact take something which he could pass to his heirs, the plaintiffs herein. Obviously, this leaves open the question: Even though he could have, did he do so?

In attempting to establish that he did, plaintiffs offer documents concluding a lawsuit over the tracts described in Grants 1439, 1441, and 1442, as well as Grant 1438, also made to Elihu Barnes and Company but not a part of the present lawsuit. That litigation was in the North Carolina Superior Court after the death of Elihu Barnes in 1861 and was captioned *A.P. Munday and wife; Leander Jarrett; and Iowa Queen, Plaintiffs vs. William Younce and wife, Sara; George Younce and wife, Elizabeth; Sanford Lee and wife.*[3] At the Spring term of 1885, Superior Court of Macon County, North Carolina, the Court entered a judgment citing an agreement between the plaintiffs and the defendants settling the case on the terms that the property would be the joint property of plaintiffs and defendants, plaintiffs owning an one-half undivided interest and defendants an one-half undivided interest, the same to be carried out by a Commissioner's deed exe-

cuted by the Clerk of Court who was appointed Commissioner for that purpose. At the Fall term of that same year, the Court entered an amended judgment adding R.V. Welch as a plaintiff and finding him together with the other plaintiffs to be entitled to a three-fourths undivided interest in the property (the other plaintiffs being described therein as the heirs at law of N.S. Jarrett) and the defendants as "represent[ing] the rights and interest in the land of A. Gregory and Eliah (sic) Barnes" to be entitled to a one-fourth undivided interest. Again the Court decreed Commissioner's deeds to accomplish this result.

Thereafter, at the Spring term of 1886, an "agreement" appears on the records of the Macon County Superior Court signed by A.P. Munday, Iowa Queen, L.A. Jarrett, Plaintiffs; William Younce, Stanford Lee and G.W. Younce, Defendants, repudiating the amended judgment as having been obtained by a fraudulent representation of one R.W. Henry, Esquire, representing himself to be the attorney of defendants when in fact he was not and reciting the reinstatement of the original judgment. However, this agreement does not seem to have had its intended affect as a Commissioner's deed was issued on May 12, 1887, in compliance with the amended judgment conveying the three-fourths undivided interest in the property to plaintiffs and using the descriptive words "heirs at law of N.S. Jarrett." Also, on December 7, 1886, and also pursuant to the amended judgment, a Commissioner's deed granted an one-fourth interest in Grants "1437" (all parties concede this should be 1439), 1441, 1442 and 1438, to the defendants as heirs at law of Elihu Barnes.[4]

Plaintiffs contend that this treatment of the property in that litigation proves that the state grants conveyed to their ancestor an individual and inheritable

---

**3.** Of the three documents, each apparently ending the lawsuit, no two have precisely the same caption. However, the above caption includes all those parties who appear in all three captions while omitting R.V. Welch, a plaintiff who appears only in the amended judgment entered the Fall term, 1885.

**4.** The above description of the documents emanating from the 1880's litigation is a gross simplification. Other facts concerning such documents are set out in the findings, *infra.*

interest in the properties described therein. Plaintiffs' problem is that it proves entirely too much. It appears to this Court that whatever else was before the Superior Court in Macon County in the 1880's, the litigation concerned a construction of the very phrase "and Company" with which this Court must wrestle today.[5] Obviously, others took with Barnes or at some point acquired some interest. A North Carolina court simply could not have been holding that plaintiffs' position in the case before this Court today was a correct one, else the other parties to that litigation would not have walked away with seeming title to three-fourths of what plaintiffs now contend is theirs. An analysis of precisely what question or questions the Superior Court did determine and what right or rights were extinguished by that termination cannot now be made. Save for the above referenced judgments and "agreement," no other documents concerning this lawsuit remain in the records of Macon County. Counsel for both parties advise the Court that state agencies of North Carolina took massive quantities of court records from Clerks' offices in Macon and various other counties, archived but failed to index the same, and that it is impossible to retrieve any backup documentation concerning the lawsuit. Nonetheless, the Court fails to see how as to the property described in Grants 1439, 1441 and 1442, all being situated in North Carolina, plaintiffs can now contend that they as heirs at law of Elihu Barnes hold a four times greater interest in 1987 than a North Carolina court held the heirs at law of Elihu Barnes owned in the 1880's. As to those tracts at least, it would appear that the greatest interest plaintiffs' evidence could possibly support is an one-fourth undivided interest.

As to the grant designated 1440 conveying other property to "Elihu Barnes and Company", there is simply no evidence that Elihu Barnes took anything individually or that anything would pass to his heirs at law. The silence of the Macon County Superior Court litigation with reference to this tract can, of course, be construed to mean that the title therein was conceded to the Barnes' heirs, but it can equally be construed to mean that the Barnes' heirs made no claim to the same property. Since the evidence before the Court is to the effect that none of the Barnes' heirs ever conveyed that property, paid taxes on that property, occupied that property, or took any other action consistent with their claiming an undisputed title, the latter choice seems to the Court to be the more reasonable and the Court concludes that the plaintiffs have no interest whatsoever in the properties described within Grant 1440.

■ Now as to the one-fourth undivided interest in Grants 1439, 1441 and 1442, the question remains: What became of it thereafter? As to Tract 1442, a deed exists made the 26th day of September, 1886, by William Younce and wife, Sara, in favor of one D.L. Haney, conveying that same property (though described with reverse calls) in fee simple. Significantly, this is a few months after the settlement in the Macon County lawsuit finding the Barnes' heirs to be entitled to a one-fourth undivided interest and the property conveyed in this deed constitutes approximately one-fourth of the property at dispute in the lawsuit. It appears that A.P. Munday, plaintiff in the Macon County lawsuit and a Jarrett heir, deeded out 1438 in fee simple. Since that time, according to the evidence before the Court, no plaintiff or defendant in the Macon County lawsuit has expressed any claim of interest in any of the tracts that were the subjects of that lawsuit until the bringing of the litigation before this Court. Defendant's expert witness concludes, and

5. After the close of evidence and after the circulation of the proposed draft which became this Memorandum of Decision, plaintiffs' moved to reopen the evidence. The Court allowed plaintiffs' motion and accepted into evidence a portion of the pleadings in the 1880's litigation. While the pleadings established that the lawsuit did not by its terms involve a construction of the phrase "and Company," the pleadings did in fact make it plain that the problem before the Court was the resolution of the question of relative ownership between E. Barnes and the person or persons apparently constituting the "and Company." These pleadings do not otherwise effect the findings of fact, conclusions of law, or result reached herein.

this Court agrees, that a partition must have occurred and that plaintiffs ancestors by their deed of conveyance extinguished their interest in 1442 and retained no more interest in any of the other tracts in this present litigation and plaintiffs are not entitled to the decree of clear title claimed herein.

As the expert witness notes, there are gaps in, and indeed whole volumes missing from, the court records of Macon County during the relevant period. These gaps, particularly with reference to a special proceedings docket which would ordinarily contain a record of a partition proceeding, may explain why the partitioning is not specifically of record. In any event, plaintiffs herein have the burden of proof.[6] While the Court is aware of no cases decided under 28 U.S.C. § 2409a which expressly assigned that burden, it seems to be the generally accepted proposition of law that "In a quiet title action, or a proceeding to remove a cloud from title, the burden of proof rests with the complainant as to all issues which arise upon essential allegations of his complaint." 65 Am.Jur. Quieting Title, Section 78. Further, the courts of North Carolina have consistently held that in "actions involving the establishment of land titles ... he who asserts ownership must rely upon the strength of his own title.... The burden of proof is upon the claimant ..." *North Carolina v. Johnson*, 278 N.C. 126, 151, 179 S.E.2d 371, 387 (1971) (citations omitted). While state law as such is obviously not controlling in this action under a federal statute, "[T]he Supreme Court 'has consistently held that state law governs issues relating to ... real property, unless some other principle of federal law requires a different result.' " *Fulcher v. United States*, 696 F.2d 1073, 1076 (4th Cir.1982) quoting *Oregon ex rel.*

*State Land Board v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977). In this case, not only does no other principle of federal law require a different result, but in fact the federal cases seem to assume this assignment of the burden of proof on the title question without the necessity of stating it. See e.g. *Fulcher v. United States, supra*, and *King v. United States*, 585 F.2d 1213 (4th Cir.1978). This Court expressly finds plaintiffs herein have not carried that burden. They have failed to establish that they can take under the original state grants as they are not the heirs at law of "Elihu Barnes and Company." They have failed to establish any other connection with the tract conveyed in 1440 and shown no interest in that tract. They have by their own evidence conveyed away whatever interest may have existed in tract described by Grant 1442 and can take no interest in that tract. With regard to Grants 1439 and 1441, the Court expressly finds that plaintiffs have failed to establish what, if any, title remained in them after the judicially ordered Commissioner's deeds of the mid–1880's and the resultant apparent partition evidenced by the fee deeds from Barnes' heirs and Jarrett's heirs to one-fourth each of the property therein. Otherwise expressed, all plaintiffs have established with reference to those two grants at the time of the 1880's litigation is that Barnes' heirs took a one-fourth interest in the total property as did Jarrett heirs.[7] Each set of heirs thereafter conveyed a one-fourth interest out. That the original interest conveyed into each set of heirs was undivided in the whole and the one-fourth conveyed out was divided in the specific might not conclusively establish that a partition had occurred were the bur-

---

**6.** Other additional evidence offered by plaintiffs (see Note 5, *supra*) is tendered to establish that there are no such gaps in the records of the relevant counties. Given the state of the evidence involved and the nature of the other evidence before the Court (inclusive of plaintiffs' and their ancestors' lack of dominion and control), the Court's findings and conclusions remain unchanged. The Court will grant that the additional evidence offered by plaintiffs could lead to the opposite conclusion. However,

plaintiffs having the burden, the Court holds that they have not carried it.

**7.** The Court is aware of the Judgment of the North Carolina Superior Court of September 12, 1986, in 86 CVS 70. This Court holds that judgment only to fix the rights of plaintiff vis-a-vis other heirs of Barnes, Jarrett, or Welch, and not to vest in them any title beyond that held at the conclusion of the 1880's litigation.

den on the government. However, the burden is not. Plaintiff may not rely on the weakness of the government's title but instead must prove the strength of its own. This, plaintiffs herein, have failed to do.

## II. DEFENDANT'S TITLE

■ The decision that plaintiffs have no claim to the property involved in the case may technically end this lawsuit. However, the Government's prayer for relief not only seeks the denial of plaintiffs' prayer, but also "[t]hat the United States be found to be truly seized and possessed of all lands in which plaintiffs' (sic) now allege an interest as described by plaintiffs' complaint and said seizure and possession found to be prior in time, duly recorded, and registered, thereby preempting plaintiffs' alleged interest." This occasions further brief comment. Since this Court has already concluded that plaintiffs have no right in the subject properties, the Government's true desires may be accomplished, but, if the Government is seeking a declaration of good title as against the world, the same cannot be said.

The Government claims title under a "perimeter" deed from Nantahala Company, a North Carolina corporation, and Wachovia Bank & Trust Company, N.A., as executor of the last will and testament of Percy B. Ferebee, deceased. This deed conveyed three tracts designated 577 (4,376 acres), 577a (450 acres more or less), and 577b (294 acres more or less). None of tracts 577a and b appear to be pertinent to this lawsuit. Most of the property sought by plaintiffs lies within the bounds of tract 577. A small portion of the claimed property lies under a corner of "Forest Service Tract 17–A," referred to in evidence in this lawsuit as the "Lassie Kelley Tract" as to which plaintiffs do not contest the superiority of the United States title.[8]

As to that part of the property claimed by the Government under the Wachovia/Nantahala deed, the Government's litigation position is that the function of that deed was simply to combine within a single description a mass of separate tracts as to which the Government already owned title. The claim of pre-ownership of the separate tracts allegedly contained within the perimeter description is based principally on the will of one Percy B. Ferebee who, according to his will, had "on July 17, 1970 ... executed and delivered a Land Donation Offer to the Secretary of Agriculture of the United States, under the terms of which [he] offered to donate to the United States of America ... [his] Nantahala Gorge property of 6,000 acres, more or less ..." The will goes on to state, "In the event that I shall die prior to the execution and delivery of a Deed for said property to the United States, then I give and bequeath all my stock in the Nantahala Company, a North Carolina corporation, and devise all of my said Nantahala Gorge property, unto the United States of America ..." This will was admitted to probate on November 12, 1971. Thereafter, on February 13, 1973, and for the apparent purpose of carrying out the terms of this bequest, the Wachovia Bank & Trust Company N.A. as executor of the will, and the Nantahala Company as grantor, each made separate deeds conveying identical properties consisting of 50 separately described tracts and excepting seven numbered tracts to the United States of America. The deed from the Nantahala Company was registered at 1:15 PM, March 13, 1973; the Wachovia deed at 1:20 PM the same date.[9] At 1:25 PM on the same date, the above-described "perimeter" deed was filed. The United States contends that the perimeter deed does no more than combine the exterior descriptions of the properties conveyed in

---

8. One possible placement of Grant 1442 would also underlie a portion of a tract designated 340a as to which plaintiffs also do not contest the superiority of the Government's title. Another possible placement does not create such an overlap, but since the Court has heretofore found that plaintiffs have no title to any portion of Grant 1442, the resolution of the question of which of these possible placements is in fact accurate is not necessary to a conclusion of this case.

9. At one point on this deed, there is a reference to March 15, however, this appears to be in error and the certification of March 13 will be deemed to control.

the 50 separate tracts less the seven exceptions. The plaintiffs contend that this is not the case. Each party offered an expert surveyor as a witness in the case. Neither party offered testimony through such expert or in any other form to support its contention on this point. This Court has neither the resources nor the expertise to correct this deficiency and, in any event, deems it unnecessary to the resolution of this cause.

The Government proceeds to outline the chain of title based on the assumption of correctness of its characterization of the "perimeter" deed and title documents in evidence (principally as plaintiffs' exhibits) to claim a chain of title running backward from the Ferebee/Wachovia/Nantahala Company transfers as follows:

> November 1, 1935 deed from Narigo Company to Percy B. Ferebee recorded in Book 61, Page 251, Swain County (plaintiffs' Exhibit No. 91); April 25, 1933 deed from B.C. Jones Commission to Narigo Company recorded at Book 60, Page 493, Swain County (plaintiffs' Exhibit No. 90); April 15, 1932 deed from S.R. Patterson to L.L. Jenkins recorded at Book 60, Page 239, Swain County (plaintiffs' Exhibit No. 89); April 16, 1932 deed from L.L. Jenkins to Nantahala Company recorded at Book 60, Page 229, Swain County on May 2, 1932 (plaintiffs' Exhibit No. 88), said deed being a deed of correction for January 30, 1931 deed from L.L. Jenkins and wife to Nantahala Company recorded at Book 59, Page 389, Swain County (plaintiffs Exhibit No. 87); January 27, 1930 deed of N.C. Talc and Mining Company to L.L. Jenkins recorded at Book 59, Page 9, Swain County (plaintiffs' Exhibit No. 86); April 30, 1913 deed from the Nantahala Marble and Talc Company to N.C. Talc and Mining recorded at Book 38, Page 624, Swain County (plaintiffs' Exhibit No. 84); said lands coming into the Nantahala Marble and Talc Company from L.J. Hill and Levi B. Nelson.

The United States then contends that its title is supportable under the North Carolina Marketable Title Act, N.C.Gen.Stat. § 47B–1 *et seq.* That statute makes marketable any title having a thirty-year unbroken chain in the State of North Carolina. The United States contends that the effect of this statute is to divest plaintiffs herein of their interest in the property since they depend on a title transaction occuring prior to the thirty-year period relevant to the title chain of the United States. This would no doubt be correct if the United States had proved this chain to be applicable to all of the property involved in this case and if plaintiffs had a title which the United States needed to divest. N.C.Gen.Stat. § 47B–2(c). *Heath v. Turner*, 58 N.C.App. 708, 294 S.E.2d 392 (1982) rev. on other grounds, 309 N.C. 483, 308 S.E.2d 244 (1983). Neither of these appears to be the case, and the argument appears to be irrelevant.[10]

Nonetheless, this Court holds that the perimeter deed in and of itself is sufficient to vest in the United States a title superior to that of the plaintiffs' as plaintiffs have established no title and, therefore, as against the heirs of Elihu Barnes, this Court holds the United States having taken under that deed and having come in to actual possession of that land holds clear title.

In so holding, this Court is expressly aware that the United States has not herein proved a chain of title adequate to meet the requirements of *King v. United States*, *supra*, nor to establish the kind of possession required by the *King* decision in order to oust a senior claimant from lappage. This Court, however, holds that on the facts of the instant controversy, the *King* standards are inapplicable. In that case, the United States relied at least in part on a theory of untimeliness or adverse possession for ouster of a superior title claimed by plaintiffs. This Court now having found that the heirs of Barnes have no such senior color of title, the United States

---

**10.** This Court is neither holding nor finding as fact or law that the perimeter deed does not precisely convey the same property as the underlying separate tract descriptions. The evidence is simply insufficient to convince the Court one way or the other.

need not make the same showing required by *King*.

## III. ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

The findings of fact and conclusions of law set forth hereafter are supplementary to those set forth in Parts I and II, *supra*, and are entered in part for the purpose of supporting this decision under Rule 52, Fed.R.Civ.P. Those findings and conclusions which are not necessary to the support of the judgment in this case are included for the purpose of providing a full record for any review which either party may seek.

A. The Court expressly finds as fact that:

### 1.

In 1854 while Swain County was still a part of Macon County, North Carolina, the State of North Carolina did grant unto Elihu Barnes and Company four tracts of land designated as Grants 1439, 1440, 1441, and 1442, all of which lay in Macon County at the time of the grant.

### 2.

The description of these grants is as introduced into evidence according to Plaintiffs' Exhibit Nos. 4, 5, 6, and 7.

### 3.

Elihu Barnes died in Macon County in 1861, leaving as heirs three daughters: Elizabeth, wife of George Younce; Sara, wife of William Younce; and Mary J., wife of Stanford Lee.

### 4.

At least one of the plaintiffs in this action is an heir of Elihu Barnes by stipulation and may take for all.

### 5.

There was no out conveyance of any of the four tracts of land by Elihu Barnes and Company.

### 6.

In the mid-1880's, the Superior Court of Macon County entered judgments in litigation affecting Grants 1439, 1441, 1442, and an additional grant numbered 1438, not a subject of the present litigation.

### 7.

At the Spring term of the Macon County Superior Court, 1885, the Court entered a judgment reciting compromise between the plaintiffs and defendants and directing Sam Rogers, Clerk of Superior Court of Macon County, to execute a deed in fee simple to the defendants (the Younce heirs and their spouses) and to the plaintiffs (the apparent heirs of one Nimrod Jarrett) vesting one-half undivided interest in the subject properties in plaintiffs' and one-half undivided interest in the subject properties in defendants (plaintiff and defendant as used in this paragraph referring to the parties in the Superior Court action not in the instant action). That judgment further recited that the deeds made by the Commissioner were to be registered in the counties of Swain and Macon.

### 8.

At the Fall term of the same year, the Superior Court of Macon County entered an amended judgment adding R.V. Welch as a plaintiff; describing the other plaintiffs (A.P. Munday and wife, Leander Jarrett and Iowa Queen) as heirs at law of N.S. Jarrett; finding R.V. Welch and N.S. Jarrett together to be entitled to three-fourths of the land in question; finding A. Gregory and Eliah (sic) Barnes to be entitled to one-fourth; and, describing the defendants in that action as representing "the rights and interest in the land of A. Gregory and Eliah (sic) Barnes."

### 9.

The amended judgment directed Sam L. Rogers to make a deed of conveyance consistent with the division of the property under the amended judgment otherwise leaving the original judgment's terms in effect.

### 10.

In the Spring term of 1886, there was entered upon the minute docket of the Superior Court of Macon County a document designated "Agreement" signed by no officer of the Court but signed by A.P. Munday, Iowa Queen and L.H. Jarrett, plain-

tiffs; and William Younce, Stanford Lee and G.W. Younce, defendants, which purported to reinstate the original judgment and negate the amended judgment.

11.

December 7, 1886, Sam L. Rogers executed a deed conveying an one-fourth undivided interest in the four tracts which were the subjects of the Macon County litigation to the defendants in that litigation.

12.

That deed was presented for registration in Macon County February 28, 1914 and registered March 5, 1914, but has never been registered in Swain County.

13.

On May 12, 1887, Sam L. Rogers executed a Commissioner's deed conveying a three-fourths undivided interest in the properties subject to the 1880's litigation to the plaintiffs therein inclusive of R.V. Welch.

14.

That deed likewise was presented for registration at the Macon County Register of Deeds on February 28, 1914 and registered March 5, 1914, and to this date, remains unregistered in Swain County.

15.

On September 25, 1886, William and Sara Younce, being some of the defendants in the Macon County 1880's litigation, issued a deed to a tract of land to D.L. Haney which said tract matches the description of Grant 1442 and constitutes by acreage one-fourth of the land in litigation in Macon County in the above-described action during the mid-1880's.

16.

On March 8, 1888, A.P. Munday identified as the Administrator of N.S. Jarrett, acknowledged the making of a deed dated November, 1875, in favor of one Matthew Cole conveying the property which constituted Grant 1438, one-fourth in acreage of the property involved in the 1880's litigation.

17.

None of the parties to the 1880's state court litigation nor anyone claiming under them have exercised any other dominion over or made any claim to any of the property involved in the 1880's litigation until the commencement of the action before this Court.

18.

By stipulation, title to tracts known as Forest Service Tracts 17a, 340a, and 143q is not in dispute and the title stands in fee within the United States of America.

19.

By will dated August 10, 1970, Percy B. Ferebee devised certain tracts of land to the government by reference to a registered deed describing specific individual tracts.

20.

By deeds recorded March 13, 1973, the executor of the estate of Percy B. Ferebee and the Nantahala Company (the stock of which had also been devised by the will of Percy B. Ferebee to the government) conveys 50 specifically described tracts excluding seven specifically described exclusions to the United States government for the apparent purpose of effectuating the terms of the Ferebee will.

21.

By joint deed recorded March 13, 1973, the executor of Percy B. Ferebee and the Nantahala Company jointly conveyed lands within a specifically described perimeter purporting to join under a single description the tracts previously conveyed by separate deed.

22.

The description in the joint "perimeter deed" includes all or substantially all of the lands claimed by plaintiffs herein.

23.

The Court is unable to determine from the evidence before it whether or not the description in the "perimeter deed" does in fact include only those lands conveyed in the separate deeds of conveyance.

24.

The United States has possessory interest in the lands now in dispute.

B. The Court thereupon enters the following conclusions of law:

**1.**

The original grants to Tracts 1439, 1440, 1441 and 1442 vest no estate in plaintiffs as heirs of Elihu Barnes.

**2.**

The proceedings in Macon County Superior Court in the mid–1880's vested at most an one-fourth undivided interest in the properties which are the subject of that lawsuit in the heirs of Elihu Barnes.

**3.**

The litigation in Macon County Superior Court in the mid-1880's had no effect on tract 1440.

**4.**

Such interest as the heirs of Elihu Barnes acquired in Tracts 1439, 1441 and 1442 as result of the litigation of the 1880's was disposed of by a partition among the parties to that lawsuit and a fee deed disposing of Tract 1442.

**5.**

Plaintiffs have not by the greater weight of the evidence established any right, title or interest to the lands which are the subject of this lawsuit.

**6.**

The United States acquired title to the lands which are the subject of this lawsuit by the perimeter deed from Nantahala Corporation and the executor of Ferebee, good at least as against the plaintiffs herein.

**7.**

The title in the United States to the "Lassie Kelley Tract" is in no way affected by any ocurrences in this litigation.

The findings of fact and conclusions of law expressed in the above Memorandum of Decision will be carried out by Judgment filed contemporaneously herewith.

**JUDGMENT**

For the reasons more fully set out in the Memorandum of Decision, Findings of Fact and Conclusions of Law filed contemporaneously herewith,

IT IS ORDERED, ADJUDGED and DECREED:

(1) Plaintiff take nothing by reason of this lawsuit, and

(2) That the United States is seized of title to the lands which were the subject of this lawsuit good as against the plaintiffs herein.